JAMES HAMILTON, Plaintiff in Error, *vs.* ADALINE HAMILTON *et al.* Defendants in Error.

*Opinion filed December 17, 1907.*

LACHES—*when alleged resulting trust cannot be enforced.* An alleged resulting trust having its origin, according to the bill, some thirty-seven years before the filing of the bill and based upon the complainant's having furnished part of the purchase money for land conveyed to his wife cannot be enforced, where the complainant, fifteen years before the filing of the bill, joined with his wife in conveying the land to their sons, who took immediate possession and openly denied the claim of the complainant, who received an annuity from them, as agreed upon when the conveyance was made.

WRIT OF ERROR to the Circuit Court of Bureau county; the Hon. EDGAR ELDREDGE, Judge, presiding.

On March 22, 1907, James Hamilton filed his bill in the circuit court of Bureau county against Adaline Hamilton, Hugh Franklin Hamilton and George Washington

Hamilton, in which he alleged that he was the husband of Adaline Hamilton and the father of Hugh Franklin Hamilton and George Washington Hamilton; that he married Adaline in 1864, and at that time she had no property and he was the owner of property in Princeton, Illinois, of the value of $1200, which he had acquired by his own efforts. and upon which they lived until 1870, when complainant sold it with the intention of removing to Iowa. After the sale complainant's wife told him that her father did not want her to go to Iowa and that he would make them a present of five acres of land, of the value of $500.' The deed was made to the wife but her father required the complainant to pay $200 for the land, and the bill alleged that the deed was made with the understanding between complainant and his wife that the complainant was to be the equitable owner of the land in the same proportion in which he contributed to its purchase and improvement. He built a house and barn and otherwise improved the premises at a cost of $2700, and with his family resided on the premises as their homestead until February 4, 1880, when they were exchanged, at an agreed consideration of $3000, for three hundred acres of land in the same county, valued at $4400, the joint note of complainant and his wife, secured by a mortgage on the land, being given for the balance of $1400. The deed was made to the wife upon her assurance that the complainant should have and own his equitable and just interests and share in the land, and should control and manage the property and have the income and proceeds of the same. The bill charges that the procuring of the deed at that time in the name of complainant's wife was an act of conspiracy between her and her father and mother, with a common purpose unlawfully to deceive, cheat, swindle and defraud complainant out of his property. Complainant and his family resided upon the land for about twelve years, complainant farming and managing it and in the meantime purchasing sixty acres more, which were also deeded to the

231—9

wife. In the fall of 1891, complainant having about $4000 worth of stock and grain on the farm, proposed to make a sale thereof to pay the indebtedness against the farm, but the two sons became dictatorial and domineering and requested complainant to make a bill of sale to them, when they would make a sale in their own names and pay off the indebtedness, but they would not allow the sale to be made otherwise, and to this complainant agreed. Then the wife and sons proposed that the farm be deeded to the sons. Before this the defendants had all begun a course of ill-treatment of complainant. On one occasion one of the sons notified a merchant to whom complainant had sold some hogs, not to pay the money to complainant, as complainant was unfit to receive and take care of it because he was out of his head, and the son received the money and never gave it to the complainant. The sons circulated false reports in the community that complainant was drinking too much; that he was a drunkard and unfit to manage the farm. They were insolent and abusive to him, and would frequently begin quarrels and carry them on in the house in the presence of their mother, and she would uphold them, and for two years before asking complainant to deed the farm to his sons his wife refused to occupy the same bed with him. Induced by the representations of his wife and sons that he would be guaranteed a home, that his difficulties with his wife would be harmonized, his marital rights restored and the peace of the family assured, he entered into a contract between himself and his wife of one part and his sons of the other, whereby the sons agreed to pay his debts to the amount of $4900, to relinquish to their mother legacies due them from her under the will of her father, amounting to $2000, to pay $800 to their mother as the share of a younger brother, and to pay an annuity of $200 to the father during his life, in consideration of the conveyance to the sons of the land and all the personal property of the father and mother, except household furniture and

wearing apparel. In March, 1892, deeds were made to the sons in accordance with this contract, though the bill alleges that the complainant never intended to deed away all his property, but his intention was that his sons should hold the land as a resulting trust for him until all the conditions in guaranteeing him a home were fulfilled. The sons realized from the personal property enough to pay all complainant's debts. The land is now worth $36,000, and the complainant and his wife have three other children, the youngest born in 1884. After the execution of the deeds the sons took and have ever since had possession of the land, the ill-treatment of the sons and wife has continued as before, and the complainant at seventy years of age, broken in health and without means, has no home but is compelled to live among strangers.

The bill further alleges that there was no intention of a gift, advancement, settlement or sale, as there were other children; that the complainant is not guilty of *laches*, because he has been trying for the past fourteen years to obtain justice and recover his property; that on November 22, 1893, he filed his bill in the circuit court of Bureau county, to which the defendants filed a demurrer, which was overruled, and the bill was subsequently dismissed in the spring of 1895 pursuant to a fraudulent contract, whereby complainant was to get $500 in cash and a sufficient income for his maintenance and a home and good treatment for life, which contract was a further conspiracy to strip him of his property; that he never received the $500 or the home, and never was permitted to see said contract but was informed as to some of its provisions, and then knew it was a fraud; that immediately after he discovered the fraud he got advice from attorneys, some of whom fraudulently deceived him, and in August, 1905, he filed another bill; that during its pendency he endeavored to have his attorneys bring the bill to a hearing, but was finally deserted by them through deception and fraud and forced to

act for himself, and while so acting as his own attorney his bill was dismissed against his will at the January term, 1907, and this present bill was filed by him at the April term, 1907, and that he has never slept upon his equitable rights. The prayer was that the defendants be declared trustees of the legal title to the property mentioned in the bill, for the use of the complainant, in proportion to the amount of capital contributed by him towards the purchase and improvement of said property, and for an accounting of the rents and profits.

A general demurrer to the bill was sustained and the bill dismissed for want of equity. To review that decree a writ of error has been prosecuted from this court.

ULYSSES G. HAYDEN, for plaintiff in error.

WATTS A. JOHNSON, and GEORGE S. SKINNER, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

So far as the bill charges fraud and conspiracy the allegations are too vague and indefinite to furnish grounds for any relief, and the bill does not proceed on that theory. Plaintiff in error bases his claim for relief on the proposition that he furnished, in the original transaction, money which was used in part payment for the real estate conveyed to his wife; that such conveyance was not made to her with the intention on his part of making an advancement, and that a trust resulted in his favor of a proportionate interest in the land. Waiving any question that may arise as to the sufficiency of the averments of the bill to show a resulting trust, and conceding that a trust existed for the benefit of plaintiff in error, yet no excuse is shown for his delay in applying for relief. Immediately after the conveyance, in March, 1892, the defendants went into and have ever since retained possession of the property. From

that time the existence of any trust was openly disavowed. Plaintiff in error then knew that his sons were claiming to be the absolute owners of the property and denying to him any interest therein. His bill, which was filed in 1894, was dismissed in the spring of 1895 pursuant to a contract then made, which he says he was never permitted to see, but he was informed as to some of its provisions and then knew it was a fraud. For ten years after that time he took no action whatever to enforce his alleged rights until August, 1905, when he filed a bill which was afterward dismissed, and this bill was filed in March, 1907. There is no satisfactory explanation of the fifteen years' delay of plaintiff in error, during which time, so far as shown by the bill, he has been receiving the $200 annuity agreed to be paid by his sons in consideration of the conveyance to them, and they have been openly in adverse possession of the land.

"Courts will not enforce resulting trusts after a great lapse of time or *laches* on the part of the supposed *cestui que trust,* especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate.—Perry on Trusts, sec. 141." (*McDonald,* v. *Stow,* 109 Ill. 40.) Equity does not encourage stale claims, since by lapse of time there must, of necessity, be great difficulty in ascertaining the exact facts as to the matter in controversy. In this case the right of the plaintiff in error had its origin, according to the allegations of the bill, in 1870,—thirty-seven years ago,—and his right has been openly repudiated for fifteen years. Unreasonable delay has been held to be a bar to equitable relief even against a trustee. *Lequatte* v. *Drury,* 101 Ill. 77; *Breit* v. *Yeaton,* id. 242; *Rogers* v. *Simmons,* 55 id. 76; *Carpenter* v. *Carpenter,* 70 id. 457.

The decree of the circuit court will be affirmed.

*Decree affirmed.*