ANN CLARY, Appellant, *vs.* EDWARD M. SCHAACK *et al.*
Appellees.

*Opinion filed February 23, 1912.*

1. MORTGAGES—*a sale by trustee in a deed of trust conveys the
legal title.* A sale and deed made by the trustee in a deed of trust
in the nature of a mortgage, even though without notice and in
violation of the trust, is not void but conveys the legal title to the
grantee and can be avoided only in equity.

2. SAME—*purchaser through trustee's sale does not take pos-
session as mortgagee.* A purchaser at a sale by the trustee in a
deed of trust in the nature of a mortgage, who dispossesses the
mortgagor, does not take possession as a mortgagee but in the as-
sertion of the rights of a purchaser, and such possession is adverse
to the mortgagor and is the assertion by the purchaser of the ex-
tinguishment of the equity of redemption.

3. SAME—*when a promise to re-convey is not based upon any
right of redemption.* Where a grantee of the purchaser at a trus-
tee's sale under the trust deed dispossesses the mortgagor, his prom-
ise to let her have the property back if she will pay him a sum
which was equal to twice as much as the mortgage debt and inter-
est, cannot be said to have been based upon any right of redemp-
tion which he recognized.

4. SAME—*remedy where sale by trustee is irregular.* Where a
sale by a trustee in a trust deed in the nature of a mortgage is
made without notice and in violation of the trust, the mortgagor
may, within a reasonable time, file a bill in equity to permit a re-
demption and require an accounting for rents and profits.

5. LACHES—*when right to compel redemption and accounting is
barred.* A mortgagor who, with knowledge of the fact that the
trustee has sold the land without notice to her, waits for a period
of thirty-two years, until the principals in the transaction are dead,
before asserting a right to redemption and accounting against the
heirs of the real purchaser at the sale, who, together with their
predecessor in title, have been in the adverse possession of the
land for such period, is barred by her delay notwithstanding she
alleges a conspiracy between the trustee and purchaser, which she
avers she was ignorant of until just prior to filing the bill.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

Ann Clary, on November 19, 1910, filed in the circuit court of Cook county a bill to set aside several conveyances of certain real estate and for other relief. The bill was dismissed upon demurrer for want of equity, and the complainant appealed.

The bill alleges that the complainant became the owner of the real estate in controversy, located at the north-east corner of North State and Chestnut streets, in the city of Chicago, on October 4, 1864, and occupied it with her family, as their homestead, until the great fire of October 9, 1871, destroyed the dwelling. After that event she and her children, her husband having died, were compelled to live elsewhere until 1876, when she purchased a two-story frame building, which she moved on the premises and occupied with her children. She was then forty-five years old, illiterate, ignorant of business, without means other than this real estate which had been conveyed to her by her husband, and she supported herself and her children by washing and ironing. The price of the building was $350, and in order to pay for it she borrowed of Edward Knauer $600, for which she gave him her promissory note due in three years, together with six interest notes, for $30 each, for the semi-annual interest at ten per cent until the maturity of the principal note. The date of the transaction was August 16, 1876, and the loan was secured by a trust deed of the real estate in controversy with a power of sale, the property then being worth $5000. Knauer had been and was at this time the friend, adviser and agent of the complainant, and he paid to her only $54.65 in cash of the proceeds of the loan, retaining the price of the building, his charges, and $100 to be applied on the interest notes when due. He told the complainant that she need not bother about the payment of any of the notes as he would look

out for her, and if she was unable to pay the notes when called upon, he would either take care of them himself or cause a new loan to be made, as the property was increasing in value so that a new loan could easily be obtained. The complainant frequently talked with Knauer about the loan, and he tóld her that everything was all right and she need pay no attention to the matter until he called upon her to do so. Relying upon these statements the complainant was lulled into security and had no fear of her rights being in any danger, but on December 7, 1878, she was forcibly ejected from the premises by certain persons claiming to be officers of the law and to have a writ authorizing such ejectment, who said that Michael J. Schaack had become the owner of the premises. On inquiry of Knauer he informed the complainant that he had disposed of her notes to Andreas Michel, and that the latter, on account of an alleged failure to pay two of the interest notes, had caused the premises to be sold by virtue of the power of sale in the trust deed and had bought them at the sale on November 11, 1878, and obtained a deed therefor. Schaack told the complainant that he knew nothing about the matter except that he had bought the premises from Michel on November 14, 1878, for $1400, and he threatened to make it hard for the complainant if she tried to make him trouble, but promised her that if she did not she could have the premises at any time upon payment of $1400, and that in the meantime he would hold the title for her. Being ignorant of her rights and deterred from making full inquiry by reason of her confidence in the information and promises of Knauer and Schaack,—particularly in Schaack's, because of his high standing in police circles,—the complainant continued to work and save in order to accumulate sufficient money to pay Schaack and recover the premises, but after several years, when she had accumulated almost enough for this purpose, she heard of Schaack's death, and then, believing her rights in the property gone, she ceased

all thought or effort in regard to it until about two weeks before the filing of the bill, when she was advised to consult a lawyer. She did so, and through this source first obtained knowledge of the conspiracy between Knauer and Schaack whereby the sale of the premises was made without notice to her and without her knowledge. Knauer and Schaack having conspired to enable Schaack to obtain the property by having it sold without the complainant's knowledge, Knauer pretended to sell the complainant's notes to Michel, though, in fact, Schaack owned them, and no demand of payment was made upon complainant nor was notice given her of any default in the terms of the trust deed, though she was all the time relying upon Knauer's promises in regard to her notes, such promises having been made for the purpose of keeping her in ignorance of Knauer's acts and in furtherance of the conspiracy between him and Schaack, and no money was due nor was there any default in the payment of interest at the time of the sale. Michel was a police officer and a relative of Schaack, and acted under his directions without any interest in the transaction, merely permitting the use of his name. Schaack was present at the sale and bid for the property. He caused Michel to bid also, and, as pre-arranged, the property was sold to Michel on his bid of $700, though no money was paid and the complainant received no credit for the surplus. Immediately after the sale, Knauer, as trustee, made a deed conveying the property to Michel, and the latter, three days afterward, conveyed it by special warranty deed to Michael J. Schaack and Christine Schaack, his wife, as joint tenants, the latter having knowledge of all the fraudulent acts in relation to the sale as well as of her husband's promise to hold the premises in trust for the complainant. Afterwards, on December 30, 1878, Knauer executed a second trustee's deed to Michel, which recited that it was made to supply defects in the prior deed, and "that said sale was made by reason of default having been made on the inter-

est notes falling due eighteen and twenty-four months, respectively, and that five weeks' notice of said sale being required, he did publish said notices in the *Chicago Legal News,* the date of the first publication being October 8, 1878, and the last November 2, 1878." In fact, no notice of the sale was published in the *Chicago Legal News* or in any other paper in Cook county.

By reason of the death of Michael J. Schaack and Christine Schaack, who died April 6, 1909, and the will of the latter, Charles W. Schaack and Edward M. Schaack have succeeded, jointly, to their title. None of them have ever resided upon the premises, but ever since the complainant was dispossessed they have collected the rents. The two-story frame building which complainant placed there in 1876 is still there and is now habitable and occupied by tenants, and on another part of the lot a three-story frame building has been built and is occupied but is old and of little value. The original loan, interest, taxes, cost of improvements and all other proper charges have been paid out of the rents, and Edward M. Schaack and Charles W. Schaack ought to be required to account to the complainant. The bill prays that the two trustee's deeds and the special warranty deed be set aside; that the trustee's sale be declared void; that an account be taken, and that upon the payment by the complainant of whatever, if anything, may be found due from her, the possession of the premises may be decreed to her. No copy of the trust deed, of either of the trustee's deeds or of the special warranty deed is shown in the record, nor are their contents in any material respect indicated more fully than has been already shown.

FREDERICK L. BROOKS, and LEMAN & RIGBY, for appellant.

VINCENT D. WYMAN, and OTTO W. JURGENS, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The object of the bill was to have a decree that the trust deed had been satisfied by the receipt of the income from the property, and it was based upon the hypothesis that the trustee's sale was void, and that the grantees in the trustee's deeds acquired by them only a right of subrogation and occupy the position of mortgagees in possession. This claim is founded upon the allegation that no notice of the sale was given. The law is well settled in this State that a sale and deed made by a trustee in a trust deed in the nature of a mortgage, without the notice required by the terms of the trust deed and in violation of the trust, are not void but convey to the grantee the legal title, and can be avoided only in equity. (*Reece* v. *Allen,* 5 Gilm. 236; *Dawson* v. *Hayden,* 67 Ill. 52; *Cornell* v. *Newkirk,* 144 id. 241; *Rice* v. *Brown,* 77 id. 549; *Quinn* v. *Perkins,* 159 id. 572.) The remedy for a sale contrary to the terms of the trust deed is in equity, only. (*Graham* v. *Anderson,* 42 Ill. 514; *Koester* v. *Burke,* 81 id. 436; *Chapin* v. *Billings,* 91 id. 539.) The deed to Michel and the deed from him to the Schaacks conveyed the legal title to the premises, and it was by virtue of this title that Schaack took possession, and not as mortgagee. The averment is, that persons claiming to be officers of the law dispossessed the complainant, claiming to act under the authority of a writ, and saying that Schaack had become the owner of the property. Schaack never claimed as a mortgagee but only as owner, and his promises to the complainant to hold the title for her and let her have the property back, were based, not upon any right of redemption which he recognized, but upon the payment of a sum twice as great as her notes and interest amounted to. The possession so taken was adverse to the appellant in the assertion of the rights of the purchaser at the trustee's sale, and must be regarded as the assertion, by such purchaser, of the ex-

tinguishment of the equity of redemption. (*Walker* v. *Warner,* 179 Ill. 16; *Harter* v. *Twohig,* 158 U. S. 448; *McKesson* v. *Hawley,* 22 Neb. 692.) In the cases cited the sales concerned were admittedly void, yet in the latter case it was said by. the Supreme Court of Nebraska: "Notwithstanding the fact that the foreclosure proceeding might have been void, it is clear that the purpose of such proceedings was to cut off and destroy the title of plaintiff, and therefore the conveyance by the trustee to Hartley, had it been legal, would have terminated the plaintiff's title. The grantees of Hartley taking and holding the property or asserting their right to hold it under warranty deeds from him was clearly adverse to plaintiff. They held as owners and the statute would run in their favor."

It is true, the sale was irregular and the Schaacks might have been compelled, in equity, to permit a redemption and to account for rents and profits. Had complainant then filed a bill for that purpose she would have been entitled to an answer from the defendants. She did not see fit to do so, but with full knowledge herself waited thirty-two years until the principals in the transaction have long been dead. Witnesses having any knowledge of the transaction may have forgotten it or died, and documents relating to it may have been lost or destroyed. Under such circumstances defendants are not required to search the past for such fragments of evidence as a previous generation may have left, to defend their title. The equitable doctrine of *laches* applies to such cases. (*Hamilton* v. *Hamilton,* 231 Ill. 128; *Moore* v. *Taylor,* 251 id. 468.) That a mortgagor who omits for years, without any reasonable explanation, to question a sale which, though voidable, is not void, will be held to have waived the irregularities and acquiesced in the sale is familiar doctrine. The defendants and their predecessors in title have been in the adverse possession of the premises many years beyond the longest period of limitation recognized by the statute. This long continued ac-

quiescence by the complainant clearly appearing in the bill, for which no excuse which can be regarded as reasonable is offered, constitutes such *laches* as to bar any claim to equitable relief, and this defense may be made by either general or special demurrer. *Kerfoot* v. *Billings,* 160 Ill. 563.

The bill alleges that Knauer and Schaack conspired against the complainant. No harm came or could have come to her through the assignment of the notes to Michel while Schaack was the real owner. The failure of Knauer to keep his promise to take care of the interest, and the sale without notice, were harmful to her. But she knew of these things in December, 1878. She knew that the $100 retained by Knauer for the purpose of paying interest was $20 short of the amount which would be due August 16, 1878. She knew that her property had been sold under the trust deed. The trustee's deed was recorded, and showed then what it shows now in regard to the notice. Nothing was concealed from her. Schaack's threat to make it hard for her if she attempted to make him trouble is at least capable of the interpretation that he would resist litigation as strenuously as he could. The bill contains the allegation that she first obtained knowledge of the conspiracy between Knauer and Schaack about two weeks before the bill was filed, but the other averments of the bill show that she knew, or could have learned, all the facts material to her rights within a few weeks after the sale. No legal reason is shown for her failure for so many years to make any effort to ascertain her rights.

The demurrer to the bill was properly sustained.

*Decree affirmed.*