Board of Education of the City of Chicago, Appellee, v. George Snyder Crilly and Edgar Crilly, Appellants.

Gen. No. 40,695.

18

Heard in the second division of this court for the first district at the April term, 1939. Opinion filed November 28, 1941. Rehearing denied December 10, 1941.

IRVING B. CAMPBELL, of Chicago, for appellants.

RICHARD S. FOLSOM, FRANK S. RIGHEIMER and EDWARD R. JOHNSTON, all of Chicago, for appellee; ALBERT E. JENNER, JR., of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal from a summary judgment in the sum of $319,935 entered against defendants as alleged tenants of plaintiff. The judgment consisted of $279,216 for unpaid rent (with interest from November 27, 1935) which accrued over the ten-year period from May 8, 1925, to May 8, 1935, under a lease of school property located in downtown Chicago. In their brief defendants state that "the case was disposed

of upon motions which put in issue the sufficiency of the amended complaint, answer, and counter-claim, as a matter of law." The judgment was entered solely upon plaintiff's motion for summary judgment. Plaintiff filed a motion in the nature of a demurrer to strike defendants' affirmative defenses and their counterclaim, but the court did not rule upon that motion. In their reply brief defendants concede that the trial court did not pass upon plaintiff's motion to strike, and that their counterclaim is not before us upon this appeal.

The amended complaint and amendment thereto allege that plaintiff is a municipal corporation and that "at the time of the leasing of the premises hereinafter mentioned, and at all times thereafter, said premises were held in trust by the City of Chicago for the use and benefit of plaintiff for the use of schools with the right of possession, use, management, control and lease in plaintiff" (a copy of the lease is incorporated by reference); that the lease was for a term of fifty years ending May 8, 1930; that the rent was to equal six per cent of the appraised value of the land as determined at five year intervals; that on June 15, 1888, "a supplemental Indenture of Lease was entered into between plaintiff and Daniel F. Crilly and Charles H. Blair," extending the term to May 8, 1985, changing the method of appointing appraisers, and lengthening the intervals between appraisements to ten years (a copy of the supplemental lease is made a part of the complaint by reference); that on February 18, 1889, said Blair assigned his interest to said Crilly, a copy of the assignment appearing on the lease attached to the complaint, and that said Crilly thereby "became the sole party in interest as lessee," in the leases, premises, and buildings, and continued to be the owner thereof until June 19, 1921, when he died testate; that the will was admitted to probate and that under the will George Snyder Crilly, Frank Lloyd Crilly, and Edgar Crilly

20

"were appointed and made Executors and Trustees of the Estate of Daniel F. Crilly, deceased"; that they "qualified as such executors and trustees, and, with the exception of Frank Lloyd Crilly, are now acting as such, and that as such Executors and Trustees they now hold all title to the aforesaid original and supplemental leases and the assignment hereinbefore mentioned, and the aforesaid defendants have been in possession of such premises as lessees thereof"; that Frank Lloyd Crilly had previously resigned and removed to California; that in January, 1925, appraisers were appointed and the true cash value of the premises fixed at $1,809,600; that defendants, together with Frank Lloyd Crilly, on July 28, 1925, filed a case in equity in the Superior court of Cook county, Illinois, entitled "*George Snyder Crilly, Frank Lloyd Crilly and Edgar Crilly, as Executors and Trustees of the Estate of Daniel F. Crilly, Deceased, Complainants v. Board of Education of the City of Chicago, Defendant,* General No. 423773," in which they sought to enjoin the instant plaintiff from attempting to collect rent based upon said appraisement; that a temporary injunction was ordered on July 29, 1925, restraining the collection of any amount of rent in excess of $60,912 per year (being the rental fixed by the 1915 appraisement) from plaintiffs in said cause; that certain proceedings (describing them) were had in said cause and as a result the bill was dismissed for want of equity; that complainants in said cause appealed to the Supreme Court of Illinois (*Union Trust Co. v. Board of Education,* 348 Ill. 256) and on April 23, 1932, that court approved the appointment of the appraisers, but reversed the cause because of the mistaken basis of appraisal, and the cause was remanded to the Superior court to hear evidence and determine the true cash value of the leased lands as of May 8, 1925; that after the filing of the mandate of the Supreme Court plaintiff filed a cross bill in the Superior court

praying that the court fix the cash value of the premises, "pursuant to the terms and provisions of the original and supplemental leases," and in accordance with the directions of the Supreme Court; that defendants filed an answer to the cross bill; that the cause was referred to a master in chancery; that following a hearing upon exceptions to the master's report a decree was entered on November 27, 1935, fixing the true cash value of the premises as of May 8, 1925, at $1,379,040. The complaint then alleges: "23. Plaintiff alleges that on the basis of the aforesaid appraisal, computed pursuant to the terms of the lease and supplemental lease, the amount of rental now due from the defendant lessees under said original and supplemental leases is $82,742.40 per year, or $20,685.60 per quarter. 24. Plaintiff alleges that the lessees, George Snyder Crilly and Edgar Crilly, have paid to plaintiff on account of such quarterly rent the sum of $15,228.00 per quarter from May 8, 1925, to May 8, 1934, but have paid no sums whatsoever to plaintiff for the period from May 8, 1934, to May 8, 1935, and that there is, therefore, a deficiency in rental paid to plaintiff in the sum of $5,457.60 per quarter for the period from May 8, 1925, to May 8, 1934, amounting for said period to the sum of $196,473.60, and a deficiency in the sum of $20,685.60 per quarter for the period from May 8, 1934, to May 8, 1935, amounting for said period to the sum of $82,742.40, the whole of the deficiency for the period May 8, 1925, to May 8, 1935, being the sum of $279,216.00." (A copy of the aforesaid decree, attached to the original complaint as Exhibit C, is made a part of the amended complaint by express reference.) The complaint then alleges that under Section 2 of the Interest Act the deficiency of rent paid in the amount of $279,216 "becoming due and payable by virtue of the aforesaid lease and supplemental lease, bears interest at the rate of 5% per annum from and after November 27, 1935." An amendment filed to the bill

22

added, at this point, a copy of the will of Daniel F. Crilly as an exhibit, alleged that the leasehold was devised by the residue clause in the same to George Snyder Crilly, Frank Lloyd Crilly and Edgar Crilly, as trustees; that the trustees were empowered to collect rents, manage the property, and distribute the net income to persons named, including the trustees, defendants herein; that the will was admitted to probate on August 8, 1921; that two claims were filed; that the inventory listed more than enough money to pay claims, specific bequests, and costs and expenses of administration. The complaint then alleges, on information and belief, that the claims, specific bequests, attorneys' fees and costs of administration have been paid and that the estate had been fully administered prior to May 8, 1925, except for filing of a final account; that, upon information and belief, income has been distributed by defendants, as trustees, during each year from 1922 to 1935. The complaint then alleges "that in the bill of complaint filed in the cause in the Superior Court of Cook County by defendants against this plaintiff, and known as No. 423773, it was alleged by the defendants in this cause appearing in that proceeding as complainants, that from and after their qualification as Executors and Trustees of the Estate of Daniel F. Crilly, they held and continued to hold all title to the aforesaid original lease and supplemental lease and the assignment by Charles Blair to Daniel F. Crilly, and that Board of Education of the City of Chicago had received and accepted said complainants as lessees, and that they were and continued to be lessees under and by virtue of said lease, and this plaintiff, Board of Education of the City of Chicago, herewith alleges that the defendant, George Snyder Crilly and Edgar Crilly, were during the whole of the period from May 8, 1925, to May 8, 1935, in possession of the aforesaid premises and the improvements thereon as lessees under the aforesaid lease, and

that they are bound by the terms and conditions thereof individually and personally, and that said defendants, in and by said lease, and by their occupation of the premises thereunder as lessees, became and were lessees, and liable to pay the rents reserved in said lease and to perform all of the covenants on the part of the lessees to be performed in said lease contained. Plaintiff alleges that the defendants, having been in possession of said premises as lessees, during the period May 8, 1925, to May 8, 1935, are liable to this plaintiff for the unpaid rental due and owing under said lease in the sums and amounts as computed upon the fair cash market value of the land as of May 8, 1925, as fixed by the aforesaid Decree of the Superior Court of Cook County entered on November 27, 1935, less such sums as were paid by defendants during the period May 8, 1925, to May 8, 1935, plus interest at 5% from November 27, 1935, and plaintiff further states that no part of said sum ($279,216.00) has been paid to plaintiff by defendants. Wherefore, plaintiff asks judgment against defendants, George Snyder Crilly and Edgar Crilly, for the sum of $279,216.00, together with interest thereon at 5% from and after November 27, 1935.''

Defendants' answer and amendments thereto admit the execution of the original and supplemental leases, but deny that plaintiff was a party thereto, for the reason that plaintiff did not exist prior to 1917, when it was incorporated; deny that the City of Chicago held title to the premises in question for the use and benefit of plaintiff, but admit that such title was held in trust for the use of schools; deny that plaintiff has any interest in the lease because the lessor was not the plaintiff but only a department of the municipal government of the City of Chicago having the same name; admit the assignment of the leases to Daniel F. Crilly, his ownership thereof, his death, proof of his will, and that defendants and Frank Lloyd Crilly were

by said will appointed executors and trustees of the estate; deny that they had been in possession of said premises, or held title to said leases and supplemental lease, as trustees, and allege that they had been acting as executors only, and that said leases had not been distributed to them as trustees; admit the resignation of Frank Lloyd Crilly, the appointment of appraisers in 1925, and the making of the appraisement; admit the filing of the bill in equity in the Superior court of Cook county in their representative capacity, but not as individuals, and admit all of the proceedings in said cause as alleged in the complaint, save the issuance of the temporary injunction; and as to said temporary injunction defendants allege that plaintiff was thereby only restrained from collecting or attempting to collect rent in excess of $60,912 per year from "George Snyder Crilly, Frank Lloyd Crilly and Edgar Crilly, as executors and trustees of the Estate of Daniel F. Crilly, deceased"; allege that defendants were not, individually, parties to said cause, and that, therefore, the bringing of the instant action by plaintiff was not restrained. The answer also alleges that the cross-bill filed by the Board of Education in the equity case after it was remanded by the Supreme Court named as defendants and prayed relief against "George Snyder Crilly, Frank Lloyd Crilly and Edgar Crilly, as executors and trustees under the will of Daniel F. Crilly, deceased, and not against these defendants individually, and that these defendants as individuals were not parties to, or bound or affected by, the proceedings or decree in that case to any extent whatever, and that such proceedings are not material to this case"; that defendants answered said cross-bill in their representative capacity only; that defendants admit the subsequent proceedings on the cross-bill, including the fixing of the value of the premises by decree of the court, but they deny materiality of the same in the instant cause; admit that their answer

admitted the correctness of the computations of unpaid rental on the basis of such valuation, but deny that such sums are owing by defendants to plaintiff; allege that all payments of rental mentioned in the decree were made by defendants as executors, and not individually, and that the complaint shows on its face that all payments which accrued prior to February 28, 1931, are barred by the five-year Statute of Limitations. Defendants also deny in their answer that plaintiff is entitled to interest under the Interest Act. Defendants further admit all of the allegations of the complaint relating to the probate of the will of Daniel F. Crilly, save one, viz., that the administration of the estate had been completed, and allege in that connection that attorneys' fees and court costs were unpaid; that the executors had been engaged in litigation concerning federal estate taxes until July, 1929, when the same was decided in favor of the executors, and that since 1925 the executors have been involved in litigation concerning the revaluation of the premises and that the trustees had refused to accept title until the rent had been ascertained; further allege that under the provisions of the will of Daniel F. Crilly the executors have power to manage the property and distribute net income until the leasehold may be assigned to the trustees. Defendants admit that they had been in possession of the premises, but allege that they entered and held possession as executors and not as trustees. As heretofore stated, defendants' counterclaim cannot be considered on this appeal.

Defendants contend that "plaintiff is not the lessor in the lease, as alleged in the amended complaint"; that "the City of Chicago is the lessor in the lease"; that "the City of Chicago is actually the lessor, because the Board of Education in 1881 was a mere department of the city government." This contention is an afterthought and without merit. The Otis Act was enacted in 1917 and the original lease and supple-

mental lease were entered into prior to that date. Both were made between the ''Board of Education of the City of Chicago, party of the first part, and Daniel F. Crilly and Charles H. Blair, same place, parties of the second part.'' By the terms of the leases Crilly and Blair recognized the said Board, as it existed in 1880 and 1888, as a body of the City, having the right to lease the school property in question as lessor, and defendants, as trustees, executors or beneficiaries under the Crilly will, are bound by the act of their predecessors. Upon the death of their father, Daniel F. Crilly, in 1921, defendants, as executors or trustees, or in both capacities, entered into possession of the premises under his will, and thereafter attorned to the present Board of Education of the City of Chicago, thus recognizing said Board as the lessor under the lease. When defendants, as trustees and executors, filed their verified complaint in equity attacking the original 1925 appraisal, they did not bring suit against the City of Chicago but against the instant plaintiff, as sole defendant; the complainants there treated plaintiff as the lessor and as the sole agency entitled to enforce the terms of the lease, and they asked that plaintiff, not the City of Chicago, be enjoined from enforcing the 1925 appraisement of the school land, on the ground that the appraisals were not made in accordance with the terms of the original and supplemental leases, and the preliminary injunction they obtained enjoined only plaintiff. An examination of the opinion of the Supreme Court upon the appeal in that case (*Union Trust Co. v. Board of Education, supra*) discloses that the instant point urged by defendants was not raised nor suggested in that proceeding, although many distinguished attorneys represented the appellants in that case; all of the appellants there recognized the right of plaintiff to enforce the terms of the lease. But defendants contend that they were not in court in that proceeding as individuals and that

anything they there did they did as trustees and executors, and their rights as individuals were not affected; that they, as individuals, are not in privity with themselves in their representative capacity, and, therefore, as individuals they are strangers to the chancery proceeding; that "they did owe a duty to the real owners of the property concerned to represent their interests to the best of their ability, and that, and that only, is what they were doing when they participated in the trial. . . . Their rights remain unaffected, just as though it [the judgment] had never been rendered." Defendants were not only made trustees and executors under the will of Daniel F. Crilly, but *beneficiaries.* The will directs "that all the balance of the net income from said trust estate shall be distributed and paid in equal shares to my five children, George Snyder Crilly, Frank Lloyd Crilly, Edgar Crilly, Erminnie Crilly Mathews, and Isabelle Crilly Butler, share and share alike; such payments to my said children to be made to each of them quarterly on or before the fifteenth day of the months of May, August, November and February in each year, for and during the term of their natural lives, respectively . . . ." The will further provides that every payment or distribution to any beneficiary shall be made to such beneficiary *direct,* so that the defendants, as trustees, made direct payments to themselves, as beneficiaries. It seems idle to argue that there is no relationship between defendants in their representative capacity and their individual capacity in the same rights of property. As plaintiff states it, "defendants, as individuals, were identified with themselves as executors and trustees in the same rights of property." The defendants occupy a dual, indeed, a plural, capacity under the will, but this unusual situation should not be allowed to be the means of defeating a just claim. As trustees and executors, they controlled the prosecution of the chancery case, in which

they were individually interested. We cannot agree with the contention that as individuals they were "strangers to the chancery proceeding." As we have heretofore shown, defendants admit that the beneficiaries were the real owners of the property concerned and interested in the chancery proceedings.

In Freeman on Judgments, vol. 1, sec. 174, p. 319, the author states: "Whenever one has an interest in the prosecution or defense of an action, and he, in the advancement or protection of such interest, openly takes substantial control of such prosecution or defense, the judgment, when recovered therein, is conclusive for and against him to the same extent as if he were the nominal as well as the real party to the action."

In *Corcoran v. Chesapeake & O., Canal Co.*, 94 U. S. 741, plaintiff sued as trustee under a bond issue and the issue was determined adversely to him. He then brought suit as owner of some of the bonds, claiming that he was not bound by the former decree because he was not a party, individually, to the first proceeding. The Supreme Court said (p. 745): "It is also argued that in that suit Corcoran was only a party in his representative capacity of trustee, and he here sues in his individual character as owner of the bonds and coupons, and in this latter capacity is not bound by that decree. But why is he not bound? It was his duty as trustee to represent and protect the holders of these bonds; and for that reason he was made a party, and he faithfully discharged that duty. It would be a new and very dangerous doctrine in the equity practice to hold that the *cestui que trust* is not bound by the decree against his trustee in the very matter of the trust for which he was appointed. If Corcoran owned any of these bonds and coupons then, he is bound, because he was representing himself. If he has bought them since, he is bound as privy to the

person who was represented. *Kerrison v. Stewart,* 93 U. S. 155, and the authorities there collected."

In *State v. Stone,* 190 S. W. (Mo.) 601, the court said (p. 603) : "Whenever a party is interested in the subject-matter of pending litigation, and is placed in the control and management of the defense therein, he is just as much bound by the judgment in the cause as the real defendant, in whose name the defense is made." (Citing cases.)

In *American Bible Society v. Price,* 115 Ill. 623, the court said (pp. 644, 645) : "The title is in the trustees, and the duty is imposed upon them to protect and preserve this interest for whomsoever shall be ultimately entitled to it. They are parties to the suit, and they stand for and represent, in this litigation, the ownership ultimately entitled to this fund, and such ownership is bound by their representation. Story's Equity Pleadings, secs. 140, 141, 145, 150; *Hopkirk v. Page,* 2 Brock. 42; *American Bible Society v. Price,* 110 U. S. 61." See, also, *Easton v. Hall,* 323 Ill. 397, 425, where the court quotes with approval the above statement of law, and adds: "So far as Shelton F. McGrath is concerned, he is an attorney for the appellant in this case, and having advised, directed and prosecuted the suit, although he is not a party to the record, is bound by the decree. *Lightcap v. Bradley,* 186 Ill. 510."

In the instant case, defendant George Snyder Crilly is an attorney at law, practicing at the Chicago bar.

In *Lightcap v. Bradley,* 186 Ill. 510, the court said (p. 530) : "Where a suit is advised, directed and prosecuted by a party in that manner, although he is not a party to the record, he is bound by the decree. (Freeman on Judgments, sec. 174; *Cole v. Favorite,* 69 Ill. 457; *Bennitt v. Wilmington Star Mining Co.,* 119 id. 9.)"

But it is not necessary for us to pass upon the question as to whether the defendants, as individuals, are

bound by the chancery decree. It is only necessary for us to decide whether certain allegations in the verified bill, to the effect that the defendants, as executors and trustees under the will of Crilly, were in possession of the premises as executors and trustees and that plaintiff had accepted them as such, are competent evidence, in the nature of admissions, that tend to support plaintiff's theory of fact that defendants were in possession of the premises as trustees. We hold that such allegations are competent for the above purpose. Under the facts of this case it would be rank injustice to hold that defendants, as individuals, *were strangers to the chancery proceedings*. Defendants admit that the beneficiaries under the will were the real owners of the property concerned and that it was their duty, as plaintiffs in the chancery proceedings, to represent their interest. The defendants, as individuals, were beneficiaries under the will.

Since the instant case was taken on the call, defendants were allowed to cite the case of *Flanagan v. First Nat. Bank of Chicago,* 307 Ill. App. 495, as additional authority in support of their contention that "the defendants, individually, are not bound or affected by the decree in the equity case, to which they were parties only in their representative capacity." As we have heretofore stated, we are not obliged to pass upon the question as to whether the defendants individually are bound by the decree in the equity case. We may state, however, that the *Flanagan* case bears no resemblance to the instant case upon the facts.

We find no merit in the further contention of defendants that any right of action under the lease is in the City of Chicago alone. The 1917 amendments to the School Act did not, in our judgment, effect a change of lessor under the old leases, but the Board of Education, under the said amendments, succeeded to the rights of the Board of Education as it existed prior to 1917. The Supreme Court, in *Union Trust*

*Co. v. Board of Education, supra,* said (p. 263) : "Contracts involving the rental of school lands vitally affect the public interest and are to be construed liberally in favor of the public. (*Joy v. St. Louis,* 138 U. S. 1; Williston on Contracts, (2d ed.) sec. 626, p. 1210; *Omaha Water Co. v. City of Omaha,* 162 Fed. 225.)"

What we have stated in connection with the defendants' first point disposes of their second point, viz., "There is no privity of estate between plaintiff and defendants."

The third, fourth and fifth contentions raised by defendants may be considered together. They are: "III. The five-year statute of limitations applies to an action for rent against an assignee of a lease, based on privity of estate." "IV. The cause of action asserted in this suit accrued in installments on the dates when payments of rent were to be made, rather than upon the entry of the final decree in the revaluation case, as plaintiff contends." "V. The temporary injunction entered in the former case did not restrain plaintiff from enforcing the cause of action asserted in this case." We find no merit in these contentions. It makes but little difference in this case whether the five or ten-year Statute of Limitations applies. Plaintiff's cause of action did not accrue until the 1925 appraisal was completed and the amount of yearly rent thereby fixed. Plaintiff's action is to recover rent based upon the final appraisal, and it was commenced within three months after the entry of the decree fixing the fair cash market value of the land for the 1925–1935 decennial period. In the opinion of the Supreme Court in *Union Trust Co. v. Board of Education, supra,* we find that all of the appellants in that proceeding admitted that an appraisal was made in 1925, but insisted that the appraisal was unlawful because it was founded upon an erroneous principle of valuation, and the Supreme Court sustained this contention and

remanded the cause "with directions there to hear evidence and determine the true cash value of the leased lands as of May 8, 1925." The Supreme Court characterized defendants' bill in equity as an action to enjoin the Board of Education of the City of Chicago from enforcing the 1925 appraisement of school land, on the ground that the appraisals were not made in accordance with the terms of the original and supplemental leases, and the court further states (p. 259) that "preliminary injunctions were granted restraining the board of education from attempting to collect any greater sum as rent for the several leaseholds than the quarterly rent due under the 1915 appraisal." The Supreme Court, in effect, held that before plaintiff would have a right of action under the leases for rent due for a decennial period it was necessary that an appraisal be made to fix the rent for that period. Moreover, the entry of the temporary injunction tolled the running of the period of limitations. The contention of defendants that plaintiff, despite the preliminary injunction, was free to sue them, as individuals, is without merit.

The defense of the Statute of Frauds, interposed by defendants, is also without merit.

Defendants concede that after the probate of the Daniel F. Crilly will they entered into possession of the premises as executors under that will, but contend that they did not enter into possession as trustees under the will, and further contend that the burden was upon plaintiff to show that defendants accepted the trust created by the will and acted as trustees. It is obvious why defendants take this position: the law is well settled that testamentary trustees in possession under a lease are individually liable for the rent that accrues under the lease. The leading case on the subject is *McLaughlin v. Minnesota Loan & Trust Co.*, 255 N. W. (Minn.) 839. There the Minnesota Supreme Court, in an able and exhaustive opinion, reviewed the

law bearing upon the subject. Among the assets of the estate in that case was a lease, and the Trust Company, a testamentary trustee, entered into possession of the premises. Defendant did not expressly assume or otherwise agree to be bound by any covenant of the lease. To quote from the opinion (p. 839): "Plaintiffs declare on the covenants of the lease, running with the land, to pay rent, taxes, and assessments, keep the building on the premises insured and in reasonable repair. . . . *The only issue presented by the record is whether because of its possession of the property as testamentary trustee, it is liable on the covenants already mentioned to pay rent, taxes, and assessments, running with the land or title.* The Short trust is said to be insolvent. The leasehold is of little or no present value." (Italics ours.) The court held that a testamentary trustee accepting a leasehold as part of trust property becomes an assignee thereof and as such personally liable on the covenants of the lease running with the title to pay rent and taxes. In that case counsel for the Trust Company strenuously argued that to impose this liability on the trustees would create great hardship, and it is relevant and appropriate, in the instant case, to quote the language of the court in answer to that argument (p. 842): "Argument has dwelt upon the hardship supposed to result from the imposition of liability upon trustees. One answer is that, were it otherwise, there would be similar hardship and resulting loss to lessors and their assignees. Another is the reciprocity of the rule, for there are conventional covenants to the performance of which by lessor or reversioner a trustee as assignee of the lease is entitled. Finally, trustees become such voluntarily. They are privileged to decline. They may refuse to accept a leasehold as part of trust property, thereby avoiding personal liability under the covenants of the lease. Doubtless, by negotiating with the reversioner, they

can in many cases come to an agreement whereby their liability will be brought within the limits of the profit from the demised property. Liability can be terminated by assignment. So the balance of convenience and hardship does not weigh unduly against trustees as a class. But that is not the reason for this decision, which is but a declaration of the law as we find it. Long has it been so, and changes therein are for Legislatures rather than judges."

Defendants do not seem to question the ruling in the Minnesota case but they seek to avoid the effect of it in the following way: They contend that "the question whether defendants were in possession as executors or as trustees is a question of fact for the jury"; that "they [defendants] admittedly having gone into possession as executors, *something more than continued possession is necessary to charge them as trustees*. They must. by words or action show unequivocally that they had become trustees"; that "they cannot be held liable as trustees until they have accepted the trust, and this must be shown by competent proof"; that "the affidavits [defendants] filed show an express, clear refusal to accept title to the leasehold as trustees. Defendants deny under oath that they have ever acted as trustees or accepted the trust—*they have the negative of this issue*—and we believe that plaintiff, in order to sustain the burden of proof, must show an actual acceptance, and that the jury must decide this issue." As we understand defendants' position they do not contend that plaintiff did not make out a *prima facie* case, under the pleadings and affidavits, that defendants were in possession of the premises as trustees, but they contend "that their affidavits show that there is a *bona fide* issue of fact on the question whether they were in possession as executors or trustees," and that, therefore, the trial court erred in entering a summary judgment. Plaintiff, in its amended complaint, alleges that defendants

in the bill of complaint filed by them in the Superior court of Cook county, entitled *"George Snyder Crilly, Frank Lloyd Crilly and Edgar Crilly, as Executors and Trustees of the Estate of Daniel F. Crilly, Deceased, Complainants, v. Board of Education of the City of Chicago, Defendant,* General Number 423773," alleged "that from and after their qualification as Executors and Trustees of the Estate of Daniel F. Crilly, they held and continued to hold all title to the aforesaid original lease and supplemental lease and the assignment by Charles Blair to Daniel F. Crilly, and that Board of Education of the City of Chicago had received and accepted said complainants as lessees, and that they were and continued to be lessees under and by virtue of said lease, and this plaintiff, Board of Education of the City of Chicago, herewith alleges that the defendants, George Snyder Crilly and Edgar Crilly, were during the whole of the period from May 8, 1925, to May 8, 1935, in possession of the aforesaid premises and the improvements thereon as lessees under the aforesaid lease," etc. Defendants' answer to these specific allegations is as follows: "The facts which are here alleged in the amended complaint are admitted except that defendants allege that they were in possession of said premises only as executors. All conclusions of the plaintiff are denied." In other words, defendants, in said answer, do not question plaintiff's allegations as to the allegations that were contained in the bill of complaint, but they allege, in effect, that notwithstanding the allegations contained in the bill of complaint they were in possession of said premises only as executors. This position is consistent with their contention, strenuously argued, that they, individually, are strangers to the chancery proceedings. We have heretofore held that certain allegations in the chancery bill are competent evidence against defendants for certain purposes. Having successfully maintained their equitable action against

plaintiff upon the theory that they were in possession of the premises as executors and trustees and acting as such, defendants should not now be heard to contend that they, as executors, never assigned the leases to themselves as trustees, and never qualified or acted as trustees, or entered into possession of the premises as trustees. The opinion of the Supreme Court shows (p. 258) that all of the appellants in that case held themselves out as lessees or assignees·of lessees under leases originally made in 1880. The Supreme Court states that the allegations in each of the nine bills of complaint before the court were substantially the same, and the court further states (p. 258): "The appraisals . . . were not satisfactory *to the lessees,* who filed a bill in the superior court of Cook county to enjoin their enforcement." (Italics ours.) The defendants, as executors and trustees, obtained relief in the equity case, but now, when plaintiff seeks to obtain rent from them, upon the theory that they were trustees, in possession of the premises under the lease, they raise the defense that a jury should pass upon the question as to whether they were in possession of the premises as executors or as trustees. They concede that they distributed the net income of the trust estate to the beneficiaries under the will, but they contend that this fact is not proof that they accepted the trust and made the said payments as trustees. The argument is that the will, construed as a whole, authorizes payment of income to the beneficiaries by the executors until such time as the trustees shall receive the residue of the estate. A careful study of the provisions of the will convinces us that it does not authorize defendants as executors to distribute the net income of the trust estate to the beneficiaries. The will plainly directs the defendants, as trustees, to make the distribution to the beneficiaries "from said trust estate," and the defendants, as executors, would have no right to make distributions "from said trust es-

tate." As plaintiff argues: "It is obvious that when defendants made distribution pursuant to the terms of the trust, they were necessarily acting as trustees. They could not deal with the trust assets without becoming trustees. They could not accept distribution of assets as beneficiaries of a trust and still maintain that no trust ever existed." The will was admitted to probate over twenty years ago. Defendants allege it is still in probate. They admit that all the debts of the estate were paid by the end of April, 1922 (the decennial period 1925 to 1935 did not commence until May 8, 1925); that all assets had been collected, and that cash assets in the estate at the time of the death of the testator were sufficient to pay debts, costs, and attorneys' fees; that the legacies were paid and *that regular distributions of the net income from the trust estate were made to themselves, their brothers, and sisters, as beneficiaries of the trust created under the will.* Where the same persons are named as executors and trustees it will be presumed, after a reasonable time to administer the estate has elapsed, that they have begun to function as trustees, even though the trustees deny they acted as trustees. (See *Coudon v. Updegraff,* 83 Atl. (Md.) 145; *State v. Beardsley,* 82 So. (Fla.) 794; *Moberley's Guardian v. Mt. Sterling Nat. Bank,* 219 S. W. (Ky.) 423.)

The question as to whether defendants were acting as trustees must be determined from the nature of the acts performed, and if they were such as could be performed by them only in their capacity as trustees, the mere assertion by them that they performed them as executors and not as trustees avails them nothing and does not tend to raise an issue of fact as to the character of the acts performed. We are of the opinion that certain uncontradicted facts in the case prove conclusively that the defendants were in possession of the premises as trustees, and that the trial court did not err in entering the summary judgment.

Plaintiff strenuously argues that "even if it be conceded that defendants were in possession of the premises as executors, they are still individually liable for the full amount of the unpaid rent." This contention is not without force, but in view of our conclusion that defendants were in possession of the premises as trustees, we do not deem it necessary to pass upon plaintiff's contention.

Defendants contend that "the statute authorizing summary judgment proceedings does not authorize the court to decide issues of fact upon motion, by affidavit or otherwise, and if the answering affidavit affirms facts constituting a defense, the motion should be denied." This contention is based upon the assumption that there was an issue of fact as to whether defendants were in possession of the leased premises as trustees, and we have already disposed of that question.

Defendants' contention that "plaintiff is not entitled to interest under the Interest Act," is without merit. In a long brief defendants devote but a few lines to this contention, and cite no authorities in support of it. The trial court allowed plaintiff statutory interest from the date of the entry of the decree of the Superior court fixing the fair cash market value of the premises as of May 8, 1925. The allowance of interest was made pursuant to section 2 of the Interest Act (Ill. Rev. Stat. 1937, ch. 74, sec. 2 [Jones Ill. Stats. Ann. 67.02]), which provides that "creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." Interest is properly awarded upon rent due under a lease. (*Kelly v. Galbraith,* 186 Ill. 593; *Heissler v. Stose,* 33 Ill. App. 39, aff'd 131 Ill. 393.) The lease fixes the measure of defendants' liability. The rent covenant runs with the land, and defendants being in possession under the lease are bound by its terms

and conditions, and rent coming due is money due "on any . . . instrument of writing."

The unpaid rent for which plaintiff sues accrued over the ten-year period from May 8, 1925, to May 8, 1935, during which time defendants occupied the premises. They paid partial rent for nine years and no rent whatever during the tenth year. The matter of the 1925 appraisal was litigated from January, 1925, to November, 1935, and during all that time the income of the property was distributed to the beneficiaries, two of whom were the defendants. After the decree of November 27, 1935, in favor of plaintiff had been entered, it was compelled, in December, 1935, to declare a forfeiture of the lease, for failure to pay rent, and plaintiff has been in possession of the premises since February, 1936. During all of these years the public school fund has been deprived of rents that were sorely needed. In our judgment defendants have no defense, upon the merits, to plaintiff's claim, and we think it is high time that this litigation should end.

The judgment of the Circuit court of Cook county is affirmed.

*Judgment affirmed.*

SULLIVAN and FRIEND, JJ., concur.