John P. Carey, Administrator of Estate of Frank Gabl, Deceased et al., Appellants, v. Anna Funk et al., Appellees.

Gen. No. 42,875.

Heard in the second division of this court for the first district at the October term, 1943. Opinion filed December 18, 1945. Released for publication January 2, 1946.

JOHN P. CAREY, of Chicago, for appellants.

THEODORE A. KOLB and GEORGE T. SPENSLEY, both of Chicago, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiffs, Hattie Gabl and Charles J. Russell, appeal from a decretal order entered by Judge MINER on June 15, 1943, striking the third amended complaint from the files "on the ground that the matters and things therein set forth, and the issues tendered thereby, are res judicata, as to both plaintiffs," and ordering that the cause be dismissed and judgment entered in favor of defendants and against plaintiffs for costs. In the original complaint John P. Carey, Administrator of the Estate of Frank Gabl, Deceased, and Hattie Gabl were the sole plaintiffs, and Anna Funk, Charles J. Russell, Elizabeth Hanck and Matthias Hanck were the defendants. Carey appeared as the attorney for the plaintiffs. The record is silent as to who were the plaintiffs in the amended complaint. In the second amended complaint Carey, as Administrator, Hattie Gabl and Charles J. Russell were made parties plaintiff and Russell was dropped as a defendant. Carey appeared as the attorney for all of the plaintiffs. In the third amended complaint, the one now before us, Carey, as Administrator, ceases to be a plaintiff, and Hattie Gabl and Charles J. Russell are the sole plaintiffs. Carey appears as their attorney.

On February 11, 1935, the estate of Karoline Gabl owned four notes, executed by Matthias W. Hanck and his wife, Elizabeth Hanck, two of the defendants in the instant case. Two of the notes, one for $2,000 and the other for $1,700, were secured by real estate mortgages, and they constituted the *res* of the present litigation and a prior one, hereafter referred to. The other two notes were not involved in the prior case nor in the instant proceeding. Two sons of Karoline Gabl were the sole executors of her will. One of them, Frank Gabl, since deceased, and his second wife, Hattie Gabl, became the central figures in a flood of litigation over the ownership of the two notes. In *Gabl v. Gabl et al., Intervening Petitioners—Funk v. Gabl,*

305 Ill. App. 620, we had before us an appeal from a decree entered in that proceeding in which the ownership of the two notes was involved. Our opinion upon that appeal was abstracted in the report, and as the chancellor's decision in the instant cause was based upon our judgment in the former case, we deem it necessary to quote *verbatim* a part of our opinion:

"The only question originally involved in this proceeding was whether Frank Gabl or his wife, Hattie Gabl, was the owner of two first mortgage notes for $1,700 and $2,000, respectively, and two separate trust deeds securing same, said securities having been received by Frank Gabl as part of his share of his mother's estate. Hattie Gabl had not been living with her husband at the time he received these securities or for some time prior thereto. After same were delivered to him she returned to live with him as his wife, but left him again some time thereafter. The then attorney for both Frank and Hattie Gabl [Charles J. Russell], who is the attorney for appellant, Hattie Gabl, on this appeal, instituted separate actions in her name on May 31, 1935, to foreclose the aforesaid trust deeds. In each of the foreclosure suits Frank Gabl filed an intervening petition, which alleged *inter alia* that the note and trust deed involved therein belonged to him and were wrongfully withheld from him by his wife. Hattie Gabl filed sworn answers to the intervening petitions, in which she alleged substantially that she acquired the securities involved as the result of a contract entered into between herself and her husband. Both cases were referred to a master on the issues formed by the intervening petitions and the answers thereto. On March 27, 1937, by leave of court, Hattie Gabl filed a verified amendment to her answer theretofore filed in each of the foreclosure proceedings, in which amendment without deleting or withdrawing any of the allegations of her original answer she averred that the notes and trust deeds were delivered to her

as a gift by her husband. Thus her sworn answers as amended presented two inconsistent (not alternative) versions of the manner in which she acquired title to the notes and trust deeds from her husband. There- after Frank Gabl by a written assignment sold, trans- ferred and assigned to his sister, Anna Funk, 'his title, right and interest' in all of his personal property, in- cluding and specifying the aforesaid notes and trust deeds and two additional notes. Gabl died July 4, 1937, and, his death having been suggested, Anna Funk under her assignment was substituted as intervening petitioner in his place and stead. After a full hearing the master filed his report finding that the assignment of Anna Funk was valid and further finding the issues in favor of the intervening petitioner. A decree was entered in accordance with the findings and recom- mendations of the master. Hattie Gabl appeals from this decree, assigning as error that said decree is con- trary to the law and the evidence." The opinion then takes up the motion of Anna Funk, an appellee, " 'to affirm the decree of the court below' because of the failure of appellant to furnish an abstract of the record 'sufficient to show the errors relied upon by said appel- lant, as required by the rules in that behalf,' " which motion we had reserved until the hearing. After a consideration of the abstract filed by the appellant, we decided that the motion to affirm the decree had to be allowed, and the decree was affirmed. In our opinion we stated that *"We have, however, notwithstanding that appellant's original and reply briefs are well nigh unintelligible, patiently and carefully read them with as much understanding as they would afford and are of opinion that there is no substantial error in the de- cree."* The plaintiffs in the instant proceeding con- tend that we should treat that statement as mere dictum; that we should hold that our judgment was based upon a technical ruling and that we did not pass upon the merits of the case, and, therefore, our judg-

ment cannot be made the basis for the defense of *res judicata* that is interposed by defendants. There is, of course, no merit in this contention. When the Supreme court denied an appeal in that case (306 Ill. App. xxiii) the judgment of the Circuit court of Cook county became final. We may add that the foregoing italicized part of our opinion was our considered judgment in the case. After an examination of the instant record and the abstract filed by appellants, we are satisfied that we would be justified in affirming the decretal order because of the failure of plaintiffs to comply with rule 6 of the Rules of Practice of this court. Moreover, what we stated in our opinion in the former case as to the nature of the appellants' original and reply briefs applies with equal force to appellants' original and reply briefs filed in the instant appeal.

After the Supreme court denied leave to appeal in the former proceeding a mandate issued from this court and was filed in the Circuit court on February 10, 1941, and on the same date the Circuit court entered an order ordering Hattie Gabl to execute an assignment of the judgment she had taken in the Municipal Court of Chicago on February 21, 1935, on the $1,700 judgment note, and on her failure to do so the master should execute such assignment. On February 19, 1941, Charles J. Russell, in his own name, filed a petition in the Circuit court moving that the order of February 10 be modified or vacated. That petition was denied, and on February 24, 1941, Hattie Gabl appeared in this court and asked us to expunge the order entered by the Circuit court on February 10, 1941. We refused, of course, to enter such an order. Our opinion in the former case was filed May 28, 1940, and we denied a rehearing on June 12, 1940. On January 19, *1942,* Hattie Gabl presented to the Probate court of Cook county a petition alleging that her husband, Frank Gabl, died intestate on July 4, 1937, and praying that letters of administration issue to John P. Carey, who appeared

as her attorney. No notice that the petition would be presented was served upon Lorraine Gabl, the only child of Frank Gabl, nor upon any person. On the same date letters of administration issued to Carey; appraisers were appointed, who set off a widow's award of $1,000; the appraisement was approved by the court on February 5, 1942, and on the same date Carey filed his inventory, which was approved. This inventory lists only a chose in action described as follows: "Right of action in the matter of a creditor's bill to recover from Anna Funk, assignee, and from her assignee or assignees, if any, the amount of the widow's award and any claims of any other creditors of the estate of Frank Gabl, deceased; the said Anna Funk being the assignee of certain notes owned by the said Frank Gabl and assigned to Anna Funk on June 26, 1937." On February 9, 1942, Charles J. Russell, the attorney for Hattie Gabl in the former proceeding and her attorney in fact in the instant case, filed a claim for $415 for legal services alleged to have been rendered to Frank Gabl. On February 14, 1942, the present proceedings were started.

Plaintiffs have abstracted only eighteen of the sixty-eight paragraphs of their third amended complaint. It would serve no useful purpose to state all of the allegations of that lengthy pleading. It alleges the death of Frank Gabl on July 4, 1937; the appointment of Carey as administrator on January 19, 1942; that the intestate left him surviving his widow, Hattie Gabl, and his daughter, Lorraine; the appointment of appraisers; the setting off of the widow's award and its approval by the court; the approval of the inventory, and that Hattie Gabl, as the widow, is entitled to an award. It also alleges that the claim of Russell for fees was allowed in the Probate court on May 27, 1942 (one hundred and two days after the instant suit was commenced). It alleges the execution of the two mortgages by the Hancks, and that Frank Gabl was the

owner of the notes on June 26, 1937; it sets up a judg-
ment by confession in the Municipal court of Chicago
on the $1,700 mortgage note on February 21, 1935, and
alleges that on February 17, 1941, the master in chan-
cery of the Circuit court assigned that judgment to
Anna Funk pursuant to the decree of the Circuit court
in the former case. Plaintiffs rely largely upon the
allegations made in sections 16 to 21 of the said com-
plaint. Briefly stated, these sections allege that on
June 26, 1937, Frank Gabl assigned the two notes to
Anna Funk; that this assignment was fraudulent and
was made to hinder and defraud Hattie Gabl in and
about the collection of her widow's award; that the
assignment was also made to defraud Charles J. Rus-
sell in and about the collection of his claim for attor-
ney's fees against Frank Gabl. Plaintiffs prayed that
the assignment of the notes to Anna Funk be declared
fraudulent and void as against Hattie Gabl and Russell
and that it be cancelled and set aside and the mort-
gages impressed with the claims of plaintiffs Hattie
Gabl and Charles J. Russell; that Anna Funk be com-
pelled to assign the mortgages to plaintiffs or the ad-
ministrator, to be applied in satisfaction of the claims
of plaintiffs. In a lengthy motion to strike the third
amended complaint, defendants set out with particu-
larity the pleadings, evidence, the master's report, the
trial judge's opinion, and our opinion in the former
proceeding; also the Probate court proceedings. As
grounds for the motion defendants allege that the third
amended complaint was insufficient in law and, further,
that the former litigation was *res judicata,* both by
judgment and by verdict, as to all issues tendered by
the third amended complaint. As to plaintiff Russell
it was urged that the complaint be dismissed as to him
because of laches. The motion of defendants was veri-
fied, and plaintiffs neither replied to the same nor did
they file any counter-affidavit; nor did they offer any
evidence to contradict the allegations of fact in defend-

ants' motion. A separate motion filed by Matthias and Elizabeth Hanck, defendants, asked that they be dismissed from the cause on the ground that they were neither necessary nor proper parties because they were not concerned in the matters set up in the said complaint. As heretofore stated, Judge MINER decided the motion "on the ground that the matters and things therein set forth, and the issues tendered thereby, are res judicata, as to both plaintiffs."

The errors relied upon for reversal are:

(1) "It was error for the court below to sustain the motions of the defendants to strike the name of John P. Carey, Administrator of the Estate of Frank Gabl, Deceased, from the complaint as a party plaintiff, because the ruling of the court below is contrary to law."

(2) "It was error for the court below to sustain the motion of the defendants to strike the second amended complaint on the grounds that Charles J. Russell, was made a party defendant, being contrary to law, because, the Circuit Court jurisdiction to vacate a judgment entered in the Probate Court."

(3) "It was error for the court below to enter an order that the third amended complaint be stricken on motion of the defendants on the grounds that the matters and things therein set forth, and the issues tendered thereby are *res adjudicata,* because, the defense of *res judicata* must be set up by plea or answer."

(4) "It was error for the court below to dismiss the third amended complaint on motion of defendants that the matters therein alleged are *res judicata,* because, two of the elements required to make the matter therein set forth and the issues tendered *res judicata* are missing."

While plaintiffs have seen fit to argue alleged errors (1) and (2), it will be noticed that (1) pertains to the original complaint, and (2) to the second amended complaint. As plaintiffs appealed only from

the decretal order striking the third amended complaint they have no right to question any ruling of the chancellor as to the complaint and the second amended complaint. However, if plaintiffs had the right to urge assignments (1) and (2) we would hold that there is no merit in them. As to assignment (1), plaintiffs have not included in the record the motion to strike the complaint, and the order striking it is silent as to the ground or grounds upon which it is based. The order does show that plaintiffs asked and obtained leave to amend the complaint and the record shows that they thereafter filed an amended complaint. The second error assigned is unintelligible, but we will assume that counsel intended to state that the Circuit court lacked jurisdiction to vacate the order entered in the Probate court allowing Russell's claim for legal services rendered to Frank Gabl. It is difficult to take this second assignment of error seriously. The motion to strike the second amended complaint was based on numerous grounds, only a few of which were abstracted. The record does not show that that motion was passed upon by the trial court, but it does show that on April 9, 1943, *on motion of plaintiffs' attorney,* the following order was entered: "It is ordered that leave be and is hereby given to dismiss Charles J. Russell as party defendant, and leave be and is hereby given to make Charles J. Russell a party plaintiff. . . ." As to the third error assigned, that the defense of *res judicata* must be set up by plea or answer, the Practice Act (Ill. Rev. Stat. 1941, ch. 110, par. 172, sec. 48 [Jones Ill. Stats. Ann. 104.048]) provides: "Defendant may . . . file a motion to dismiss the action or suit, where any of the following defects appear on the face of the complaint, and he may . . . file a similar motion supported by affidavits where any of the said following defects exist but do not appear upon the face of the complaint: . . . (e) That the cause of action is barred by a prior judgment." Subsection (3) of par. 172 pro-

vides that if upon the hearing of such motion the opposite party shall present affidavits or other proof denying the facts alleged or establishing facts obviating the objection the court may hear and determine the same and may grant or deny the motion, but if disputed questions of fact are involved the court may deny the motion without prejudice. In the instant case, after defendants had filed their verified motion to strike, plaintiffs filed no counter-affidavit, and offered no proof to contradict the allegations of facts in defendants' motion to strike, and, therefore, the facts alleged in defendants' motion stand uncontradicted. There is no merit in the third assignment of error. As to the fourth assignment of error: The present proceeding presents a clear case where the doctrine of *res judicata* applies.

"*Res judicata* has a fixed meaning in law. It embraces not only what was determined in the earlier proceeding but covers any and all matters which might have been presented and an adjudication thereon determined in such proceeding. (*Rogers v. Higgins,* 57 Ill. 244; *Bennitt v. Star Mining Co.,* 119 id. 9; *Lusk v. City of Chicago,* 211 id. 183; *Marie Church v. Trinity Church,* 253 id. 21; *Bailey v. Bailey,* 115 id. 551; *Godschalck v. Weber,* 247 id. 269.) When there has been a final judgment or decree neither party thereto should again be permitted to relitigate by undertaking to change his position in the case and to force his adversary again to defend against the same matters and matters collateral thereto as were properly involved or might have been brought forth in the prior litigation, nor should the time of the court be taken in considering and deciding issues between the same parties involving the same subject matter where there has already been one final decision, which is still in full force and effect. Property rights and civil liberty cannot be properly safeguarded if parties are to be permitted,

after final judgment and decree, to again litigate the same matters. Final decrees and judgments must be permanent in their character in order to give to the citizen a sense of security.'' (*Webb v. Gilbert,* 357 Ill. 340, 351, 352.)

''The doctrine of *res judicata* is, that a cause of action finally determined between the parties on the merits, by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except as the judgment or decree may be brought before a court of appellate jurisdiction for review in the manner provided by law. A judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties or those in privity with them. The doctrine extends not only to the questions actually decided but to all grounds of recovery or defense which might have been presented. (*Wright v. Griffey,* 147 Ill. 496; *Markley v. People,* 171 id. 260; *Terre Haute and Indianapolis Railroad Co. v. Peoria and Pekin Union Railway Co.,* 182 id. 501; *Harvey v. Aurora and Geneva Railway Co.,* 186 id. 283; *Godschalck v. Weber,* 247 id. 269; *People v. Harrison,* 253 id. 625.) Where the former adjudication is relied on as an absolute bar to a subsequent action, it must be shown that the cause of action, the thing to be recovered and the parties are the same in both proceedings. The principle of *res judicata* applies, however, to cases where, although the cause of action is not the same, some fact or question has been determined and adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the determination in the former suit of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the later suit, regardless of the identity of

the cause of action, or the lack of it, in the two suits.''
(*Harding Co. v. Harding,* 352 Ill. 417, 426, 427.)

The *res* in the former case and the present case
is the same, viz., the two mortgage notes in question,
and the essential relief sought in both proceedings was
to have the assignment of Frank Gabl to Anna Funk
set aside. In the former proceeding, in her effort to
have the assignment set aside, Hattie Gabl, in her
original sworn answer to the intervening petition filed
by Frank Gabl, stated that she acquired the securities
in question as the result of a contract entered into be-
tween herself and her husband. Later she filed a veri-
fied amendment to her answer in which she averred
that the notes and trust deeds were delivered to her
as a gift by her husband. She also alleged that the
assignment was procured by fraud and undue in-
fluence; that Frank Gabl was insane at the time in
question; that he lacked legal capacity to make the as-
signment; that he was ignorant of the contents of the
document when he signed it. She also alleged that
*there was no estate of Frank Gabl involved in the pro-
ceedings;* that prior to his death he had been an inmate
of the Hines hospital and she had information that she
could verify that he had been placed in a strait jacket
and had been kept in the psychopathic ward at the
Hines hospital for observation for fifteen days. In
the instant suit it is alleged that the assignment to
Anna Funk was made for the purpose of delaying, hin-
dering and defrauding her, and, more particularly, to
prevent her from collecting her widow's award out of
the assets of the estate of Frank Gabl, and the prayer
is that the assignment may be impressed with the
amount of the widow's award and that the court decree
that Anna Funk assign the notes to her or to the ad-
ministrator of the estate of Frank Gabl "to apply in
satisfaction of her widow's award and the claim of the
said Charles J. Russell." The new ground advanced
for the setting aside of the assignment is plainly an

afterthought and without merit. In the former proceeding the master found all of the issues in favor of the intervening petitioner and against Hattie Gabl, and specifically found that the assignment to Anna Funk was valid; that at the time it was executed the notes in question rightfully belonged to Frank Gabl, and that Anna Funk succeeded to all of the rights, title and interest of Frank Gabl in and to the notes in question; that Frank Gabl was rational and capable of transacting business when he made the assignment. The chancellor sustained, *in toto*, the findings of the master. In *Geiger v. Merle*, 360 Ill. 497, 510, 511, it is stated: "A husband has the power to dispose of his personal property during his life independently of the concurrence of and exonerated from the claim of his wife, provided the transaction is not merely colorable and attended with circumstances indicative of fraud upon the rights of the wife. (Blankenship v. Hall, 233 Ill. 116; *Padfield v. Padfield*, 78 id. 16.)" But, in any view, the new ground urged, viz., that the assignment was in fraud of Hattie Gabl's right to a widow's award, should have been presented in the former proceeding. Frank Gabl died on July 4, 1937. The master's report was not filed until April 18, 1938, and the decree was not entered until June 20, 1938. Our opinion in the former case was filed May 28, 1940, but it was not until January 19, 1942, that Hattie Gabl procured the appointment of John P. Carey as administrator of the estate of Frank Gabl. In her petition Hattie Gabl gave the address of Lorraine Gabl, the only child of Frank Gabl, as 3220 No. Halsted street. That address was the residence of Hattie Gabl and Attorney Russell, and the latter has his law office at that place. This false statement as to the address of Lorraine was plainly intended to prevent her from learning of the Probate court proceedings. As we have heretofore stated, the inventory filed by Carey lists as the only asset a claim *of the estate against Anna Funk.*

That claim was intended as the basis, for Carey, as administrator of the estate of Frank Gabl, to commence the present proceedings, and it was asserted by Carey in the original complaint, the first amended complaint and the second amended complaint, but in the third amended complaint Carey, administrator, voluntarily dropped out as a plaintiff, and in the third amended complaint Carey appears as attorney for Hattie Gabl and Charles J. Russell, the sole plaintiffs in that pleading. The right of Carey, administrator, to enforce the alleged claim of the estate against Anna Funk was thereby abandoned by the action of Carey, attorney for Hattie Gabl and Russell. That Carey was a mere tool of Attorney Russell is clear from the record. The proof of service of notice of appeal in the instant case is signed by Russell as "agent of John P. Carey." Carey's conduct in permitting the claim of Attorney Russell for attorney's fees against Frank Gabl for $415 to be allowed in the Probate court reflects upon his integrity as administrator. Russell's claim was not allowed until May 27, 1942. Instead of fighting the claim, as he should, Carey, as administrator, commenced the present proceedings, on February 14, 1942, in which he appeared as attorney for himself, as administrator, and for his coplaintiff, Hattie Gabl. While he made Russell a defendant he prayed for no relief against him. The record shows that Russell represented Hattie Gabl throughout the former proceeding and thereafter; that he represented Hattie Gabl in the two mortgage foreclosure suits commenced in the Circuit court on May 31, 1935, in which the two notes in question were involved. That he is her real attorney in the present proceedings seems reasonably clear from a study of the record. The bill filed by Russell in the Probate court against the estate of Frank Gabl contains a number of items, the first dated February 2, 1935; the last date given in the bill is December 13, 1936. No date is given for the last item. His claim in

the Probate court was filed February 9, 1942, and it appears, therefore, that over five years elapsed after the last date mentioned in his bill and the date of the filing of his claim. If he had a *bona fide* claim against Frank Gabl, he knew that he had the right to have proceedings started in the Probate court wherein he might assert his claim. From May 31, 1935, he had been engaged in litigations to enforce Hattie Gabl's alleged rights in reference to the two notes, during most of which time Hattie Gabl was bitterly attacking the right of Frank Gabl to make the assignment to Anna Funk, and Russell's action in presenting his claim against the estate of Frank Gabl long after the death of the latter and the administrator of the estate being his tool and his present attorney, seriously taints the claim, to say the least. We have seen fit to state the nature of Russell's claim and the conduct of Carey, administrator, in reference to the same for the reason that it appears from plaintiffs' brief that they contend that the allowance of Russell's claim in the Probate court and his appearance as a plaintiff in this case defeats the defense of *res judicata* asserted by defendants. There is no merit in that contention, as the doctrine of *res judicata* applies to Russell's claim as well as to Hattie Gabl's. He now contends that the assignment was in fraud of his rights as a creditor of Frank Gabl. As the attorney for Hattie Gabl in the former proceeding, if he had any such right as he now claims, he could, in an apt way, have asserted it in the former proceedings. That he is bound by the former decree, see *Board of Education of Chicago v. Crilly,* 312 Ill. App. 16, 28, 29, where the authorities bearing upon the subject are cited. There is force, also, in the contention of defendants that even if Russell had an honest claim against Frank Gabl, the record shows that he was guilty of laches in an aggravated form.

Defendants contend and strenuously argue that the decretal order in the instant case might be sustained

upon another ground, urged by defendants in the trial court, viz., that the third amended complaint was insufficient in law, but in view of our conclusion that the doctrine of *res judicata* applies to the case we do not deem it necessary to pass upon the instant contention.

The present proceeding presents a plain case of an attempt to relitigate the former suit.

The decretal order of the Circuit court of Cook county should be and it is affirmed.

*Decretal order affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.