Floyd J. Stoner, Appellant, v. Herbert H. Stoner, Appellee.

Gen. No. 45,954.

Opinion filed September 29, 1953. Released for publication November 12, 1953.

COHON & GOLDSTEIN, of Chicago, for appellant.

ECKHART, KLEIN, MCSWAIN & CAMPBELL, of Chicago, for appellee; JOHN NEAL CAMPBELL, and MARIE A. PALUMBO, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order of April 10, 1952, denying the petition of plaintiff to vacate a satisfaction of judgment filed by defendant on October 3, 1949. On November 16, 1943 a decree was entered in the superior court of Cook county in favor of Floyd J. Stoner against his brother Herbert H. Stoner for payment of $85,355.40. In August 1946 the brothers met in the office of Paul Hassell, attorney for defendant. It was there agreed that the decree would be satisfied and mutual releases would be executed. Under date of August 31, 1946 a mutual release agreement was drawn up, reciting that judgment was obtained by plaintiff against defendant on November 16, 1943; that there was a judgment for costs against plaintiff in favor of Helen Stoner (Herbert's wife) and Stoner's Commissaries, Inc.; that other controversies had arisen between the brothers; and that certain amounts and properties had been accepted in satisfaction, and each released the other from any and all claims. This agreement was signed by Herbert H. Stoner, Floyd J. Stoner, Helen Stoner, and Stoner's Commissaries, Inc. Herbert paid Floyd $3,000 and subsequently Floyd executed and delivered a satisfaction of judgment to Herbert, which was not filed with the clerk of the court until October 3, 1949.

On November 15, 1949 the petition in question was filed by Floyd, alleging that he had received only $3,000 for the satisfaction of judgment and that this was an insufficient consideration. The petition prayed that the filing of the satisfaction be vacated and that the record be made to show that the $3,000 had been accepted by him in partial satisfaction of said judgment. Defendant answered, setting forth the defense of laches, in that plaintiff had not taken action for a period of more than

three years to rescind or disavow the satisfaction admittedly executed by him, and that there were additional considerations for the release. The court, after hearing the evidence, dismissed the petition for want of equity. From this order plaintiff appeals.

██ A party seeking to rescind or set aside a transaction on the ground of fraud or inadequacy of consideration must move with reasonable diligence. *Huiller v. Ryan,* 306 Ill. 88; *Hamilton v. Hamilton,* 231 Ill. 128, 133; *Prather v. Hill,* 36 Ill. 402; *Ullrich v. Ullrich,* 299 Ill. App. 460; *Knaus v. Chicago Title & Trust Co.,* 365 Ill. 588. In *Huiller v. Ryan, supra,* eighteen months had elapsed between the execution of a quitclaim deed and institution of a suit to set it aside for inadequacy of consideration. It was held that this was too long a delay. In *Prather v. Hill, supra,* a bill in chancery to set aside a sale by a sheriff was filed three years after the sale. The court there said:

"Where an application comes so late as the present one for relief, it should be satisfactorily shown that the party was prevented from making his application at an earlier period, before a court will grant relief. In this case no reason is shown for the extraordinary delay."

██ While the question of laches is stressed and argued at length by defendant here, plaintiff gives it brief consideration, relying squarely on the proposition that the failure of defendant to file the satisfaction piece for three years excused plaintiff's delay. At first blush this argument appears to be plausible. But, on consideration, it can readily be seen that there is no substantial relationship between the two events. The satisfaction of judgment was not the contract, but was an instrument given to implement the agreement, the true substance of which was in the exchange of mutual releases. Delay in filing the satisfaction piece did not

prevent plaintiff from moving to set aside the agreement. Plaintiff, at any time before the satisfaction piece was filed, could have caused an execution to issue and thus compelled defendant to litigate the validity of the satisfaction and release, or he could have filed a separate complaint in equity. It was thus within the power of plaintiff to precipitate a trial of the issue at any time and it was his duty to take such action promptly. Defendant, on the other hand, was under no legal duty to file the satisfaction piece. His delay could hurt no one but himself, and would not affect the binding character of the mutual release agreement. In the absence, therefore, of any justification for waiting three years to attack the validity of the mutual release and the satisfaction given pursuant thereto, the laches of plaintiff is in itself sufficient to sustain the chancellor's finding.

However, we have considered the question of whether the consideration for the release and satisfaction was adequate. In *Huiller v. Ryan,* 306 Ill. 88, it was said: "Mere inadequacy of consideration is not a distinct ground for equitable relief . . . and standing alone is ordinarily of little weight as evidence of fraud . . . ." However, there is a principle of law that the payment of a part of a fixed and certain demand which is due and not in dispute is not in satisfaction of the whole debt, even where the creditor agrees to accept the part for the whole and gives a receipt for the whole. *Ostrander v. Scott,* 161 Ill. 339, 345; *Wright v. Federal Wrecking Co.,* 331 Ill. App. 231; *Fichter v. Milk Wagon Drivers' Union,* 382 Ill. 91. This principle is one which courts apply cautiously. To do otherwise might bring it into conflict with another principle, to-wit: that it is the policy of courts to uphold agreements in settlement of disputes, particularly, family controversies. In considering this phase of the case, the

origin and history of the controversy is relevant. The two brothers originally were in partnership in Ohio. Defendant purchased plaintiff's interest in the business in 1923 and gave him notes therefor. In 1924, plaintiff sued in Ohio, and obtained a judgment on these notes in the sum of $54,080. Later in that year defendant paid plaintiff $10,000 in cash and gave him notes in the amount of $42,360, in consideration of which plaintiff promised to vacate the judgment he had entered on the 1923 notes. The two brothers later left Ohio and came to Chicago, where they revived a business association and personal friendship. Then, in 1940, sixteen years after they had been given, plaintiff sued defendant on the notes, and it was in this suit, of which the instant proceeding is a branch, that the decree was entered in favor of plaintiff and against defendant in the sum of $85,355.40. In addition to seeking this money decree against defendant, plaintiff also impleaded Stoner's Commissaries, Inc. and Helen Stoner, claiming that he had a partnership in the restaurant business operated by them. In this branch of the case, the finding was against plaintiff, and the court taxed costs of $901.50, twenty-five per cent to defendant and the balance of $676.13 to plaintiff. All these fees were paid by Mrs. Stoner. Following this, the instant proceedings were instituted.

Upon the hearing, Paul Hassell, one of the attorneys for defendant, testified that the two brothers came to see him four or five days prior to August 31, 1946 and said they had been talking over the question of settling all their family troubles and feuds; that he, Hassell, then said to them that they had been litigating since the early 1920's and that each had claims against the other; that Herbert had always contended that he had a claim with respect to their transactions in Cleveland; that there was some question relating to the Wilson

avenue restaurant, in connection with which Mrs. Stoner had paid out several thousand dollars for Floyd's rental; that she also had a judgment against Floyd for costs, as she had advanced moneys to pay the master's fees; that she was also entitled to reimbursement for sums advanced for the purchase of kitchen equipment for a restaurant evidently operated by Floyd; and that her consent would have to be obtained to the settlement. Hassell further testified that the brothers agreed that all such controversies were settled by the payment and acceptance of $3,000; that he called Mrs. Stoner, and upon her concurrence in the settlement, he prepared mutual releases; that he gave copies of the releases to plaintiff; and that plaintiff said he was not prepared to sign them, but would show them to one Cohon, his lawyer. Finally, the papers were signed by all the parties, and defendant paid plaintiff $3,000.

 It is urged by plaintiff that the case for defendant rests upon the testimony of a witness who was at the same time a lawyer for defendant. The only witness presenting contrary evidence by way of a flat denial was plaintiff himself. Therefore, the question before the chancellor was whether he should accept the testimony of a party as vitally interested as plaintiff or of a lawyer who was a member of a firm then appearing on behalf of defendant. The court also had before it the fact that the parties had reduced their agreement to a writing which recited the existence of various controversies between them and the release by each of the other from all claims. Plaintiff thus was in the position of disputing the recital of a written instrument to which he had subscribed. Under these circumstances, we cannot say that the court committed error in choosing to believe the testimony of the lawyer. This court must accept the finding of the chancellor, unless

311

it is against the manifest weight of the evidence. *Schmalzer v. Jannik,* 407 Ill. 236 (and cases there cited); *City of Quincy v. Kemper,* 304 Ill. 303; *Nalty v. Federal Casualty Co.,* 245 Ill. App. 180. Plaintiff in his petition alleges that he received no other consideration for his release than the $3,000. For the purpose of sustaining a settlement based in part on a consideration of disputed claims, it is only necessary that there be claims *asserted* in good faith. The point made by defendant, that plaintiff has not denied that there were such asserted claims, is therefore well taken.

 Plaintiff argues that all claims were merged in and barred by the 1943 decree. However, the claims asserted by defendant related to facts and transactions which, if they had any valid existence, gave rise to separate causes of action. The rule is stated in 8 A. L. R. 694, 695:

"The general rule is that a defendant, having a claim available by way of set-off, counter claim, or cross petition, has an election so to plead it, or to reserve it for a future independent action, and a prior action in which a claim might have been asserted as to set-off, counter claim, or cross petition is no bar to a subsequent independent action thereon."

This is the rule in Illinois. *Quick v. Lemon,* 105 Ill. 578; *First Trust & Savings Bank of Kankakee v. Powers,* 325 Ill. App. 600, 605; *Hathaway v. Ford Motor Co.,* 264 Fed. 952, 954. Cases cited by plaintiff are, on examination, all distinguishable. *Leitch v. Hine,* 393 Ill. 211, was a suit for damages for trespass to land. The court held that a specific issue of fact involving possession of the land, an essential issue in both prior and subsequent actions, had been adjudicated in the prior action. *Carey v. Funk,* 327 Ill. App. 274, was a case in which the court stated explicitly that the *res* and the essential relief sought were the same. In *Pusa-*

312

*tere v. Darnell*, 296 Ill. App. 525, the court held that the obligation in question was the same as that in the previous case and that the defense was not one in the nature of a counterclaim.

 A careful study of those cases in which a consideration has been held inadequate when given in satisfaction of a fixed debt will reveal the true nature of the rule. It is simply' this—as courts often protect a debtor against a harsh and oppressive transaction with a creditor, so the courts may protect a creditor against the oppression of a debtor who uses a superior cash position to drive an unconscionable bargain. Thus, in *Wright v. Federal Wrecking Co.*, 331 Ill. App. 231, cited at length by plaintiff, the Industrial Commission awarded compensation for injuries sustained by plaintiff. A judgment of $4,728.11 was entered thereon in the circuit court. It was sought to settle this judgment by payment of $350. The unconscionable nature of this agreement was clear. In *Hayes v. Massachusetts Mutual Life Ins. Co.*, 125 Ill. 626, an insurance company for $6,045 settled a claim of $12,000 due upon a life insurance policy. There, the conspicuous absence of a real defense gave rise to doubt as to the *bona fides* of the alleged dispute. These cases are significantly and substantially different from the situation presented to us here. For almost thirty years, these brothers have been in business deals together and have had controversies which have been disputed, litigated, settled and revived. In family transactions, who can fully understand all the underlying motives, inducements, and intangible considerations? Courts have recognized this and have established the sound policy that particularly in such cases, they will sustain an accord. If Floyd had given some of his property to his brother, and if the gift had been executed freely, the law would not interfere merely because he later changed his mind. Here,

for whatever reasons may have motivated him, Floyd Stoner finally agreed to settle an old claim against his brother. Equity should not interfere merely because he changed his mind three years after such a settlement.

*Order affirmed.*

TUOHY and ROBSON, JJ., concur.